IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

NDIA HENDERSON,                             )
                                            )
                    Plaintiff,              )
                                            )      Civil Action No. 25-339
         v.                                 )
                                            )
FRANK BISIGNANO                             )
COMMISSIONER OF SOCIAL SECURITY,            )
                                            )
                    Defendant,              )

MEMORANDUM OPINION

## I.    INTRODUCTION

Pending before the court is an appeal from the final decision of the Commissioner of

Social Security ("Commissioner" or "defendant") denying the claim of Ndia Henderson

("plaintiff") for supplemental security income ("SSI") under Title XVI of the Social Security Act

("SSA"), 42 U.S.C. §§ 405(g), 1383(c)(3).   Plaintiff contends the Administrative Law Judge

(the "ALJ") erred in failing a) to adequately explain why, after finding social interaction

limitations persuasive, the ALJ in the decision created distinctions between plaintiff's ability to

interact with the public compared to supervisors and co-workers, and b) by implication, that the

residual functional capability ("RFC") developed for plaintiff was erroneous in not limiting her

interactions with supervisors and co-workers to "occasional" like he did for interactions with the

public.[1]   Plaintiff asserts that the ALJ's decision was arbitrary, is not supported by substantial

evidence, and should be remanded for payment of benefits or, alternatively, for further

---

1. "The Third Circuit has explained that 'objections to the adequacy of hypothetical questions
posed to a vocational expert often boil down to attacks on the RFC assessment itself.'" Durden v.
Colvin, 191 F. Supp. 3d 429, 460 (M.D. Pa. 2016) (quoting Rutherford v. Barnhart, 399 F.3d
546, 554 n.8 (3d Cir.2005)).

administrative proceedings.   The Commissioner asserts that the ALJ's decision is supported by substantial evidence and the Commissioner's decision should be affirmed.

Plaintiff filed a memorandum of law in support of a motion for a judgment reversing the decision of the Commissioner. (ECF No. 5, as corrected ECF No. 6.)   The Commissioner filed a brief in opposition to plaintiff's motion for judgment asserting that the ALJ's decision should be affirmed. (ECF No. 7.)   For the reasons set forth below the court will affirm the decision of the Commissioner.

## II.    PROCEDURAL HISTORY

On August 13, 2022, plaintiff protectively filed a Title XVI application for SSI beginning August 5, 2022, which is at issue before the court. (R. at 17.)   The claim was initially denied on June 30, 2023, and again upon reconsideration on January 26, 2024. (Id.)   On February 14, 2024, plaintiff requested a hearing, which was conducted before the ALJ on September 11, 2024. (Id.)   Plaintiff agreed to appear and testified in person at the hearing. (Id.)   Plaintiff was represented by an attorney at the hearing. (Id.)   An impartial vocational expert ("VE") also testified at the hearing by phone. (R. at 17, 37)

In a decision dated December 23, 2024, the ALJ determined that plaintiff was not disabled within the meaning of the SSA under §§ 216(i) and 223(d) and was able to make an adjustment to other relevant work. (R. at 26.)   Plaintiff timely requested a review of that determination, and by letter dated September 26, 2025, the Appeals Council denied the request for review and the decision of the ALJ became the final decision of the Commissioner. (R. at 1-5.)   Plaintiff subsequently commenced the present action seeking judicial review.

III.     **PLAINTIFF'S BACKGROUND AND MEDICAL EVIDENCE**

A.       **Background**

Plaintiff was born on December 31, 1990, and was 31 years old, a "younger individual," at the time her application for benefits was filed and was 33 years old at the time of the hearing before the ALJ. (R. at 25, 43.)   She has a high school education. (R. at 25.)   Plaintiff is not married and lives in an apartment with an uncle and his girlfriend. (R. at 43.)   She is capable of cleaning, cooking, laundry, taking out the trash, and other "basic stuff" around the apartment. (Id.)   She can manage money to pay bills, count change, handle a savings account, and use a checkbook. (R. at 242.)

Plaintiff previously worked briefly as a home health aide and as a laborer for companies that ran assembly lines in plastics or metal work. (R. at 42, 233, 281, 287.)   The ALJ determined plaintiff had "not engaged in substantial gainful activity" or past relevant work since the application date for benefits, August 5, 2022. (R. at 19, 25, 60.)   During the hearing the ALJ heard testimony from plaintiff regarding her limitations, predominantly focusing on physical limitations following three mini-strokes and her mental health limitations. (R. at 40-59.) Plaintiff reported residual physical weakness since the strokes and mood swings, panic attacks and anxiety. (R. at 44-46.)   She reported being unable to hold a job because "the voices in [her] head" tell her to "leave work" sometimes. (R. at 41.)

Plaintiff takes walks, rides a bike, reads, watches television shows, socializes with friends and family, goes to the gym, and takes public transportation. (R. at 22, 911, 949, 986.)

Plaintiff's reported medication list includes: Xarelto, Atorvastatin, occasionally Seroquel (sertraline), and capsaicin cream. (R. at 246, 926, 946.)

### B.     Medical Record

### 1.     Doctor Brian Spinks

On June 5, 2023, plaintiff was seen and evaluated by Brian Spinks, D.O., ("Dr. Spinks"), for a consultative internal medicine evaluation for the Benefit Disability Determination ("BDD") office's use in making a determination of disability. (R. at 910-926.)   Following his one-time evaluation, Dr. Spinks completed a medical source statement. (R. at 914-919.)   He noted plaintiff's medical history, as plaintiff reported it to him. (R. at 924.)   From his examination, Dr. Spinks reported plaintiff to be fluent, "oriented in all spheres, and showed no evidence of hallucinations, delusions, impairment [to] judgment, or significant memory impairment." (R. at 912-913.)   He noted plaintiff was "able to button, tie, zipper and Velcro." (R. at 913.)   Dr. Spinks recorded plaintiff

> appear[ed] to be in no acute distress. Gait normal. Did not bring in cane … Can walk on heels and toes without difficulty. Squat full. Stance normal. Needs no help getting on and off exam table. Able to rise from chair without difficulty.

(R. at 912.)   Plaintiff was also observed to demonstrate "strength 5/5 in upper and lower extremities." (R. at 913.)

In the medical source statement Dr. Spinks supplied following his examination of plaintiff, he indicated in the check-boxes that plaintiff could continuously lift and carry up to 10 pounds, frequently up to 20 pounds, and occasionally up to 50 pounds. (R. at 914.)   He opined that plaintiff could sit up to 6 hours in an 8-hour workday and could stand or walk for up to 3 hours of an 8-hour workday. (R. at 915.)   At the time of this evaluation, Dr. Spinks found the use of a cane to

4

be medically necessary for plaintiff, but plaintiff could use her free hand to carry small objects. (Id.)   He found plaintiff to have normal range of motion for all areas tested. (R. at 921-924.)   Dr. Spinks' assessment concluded with no additional recommendations to add, no other labs or tests pending, and reported plaintiff's prognosis as "fair" with no amplifying information. (R. at 913.)

### 2.   Doctor Amanda White

On January 12, 2024, plaintiff was seen by Amanda White, Psy.D., ("Dr. White") for a consultative psychological examination (R. at 983-994.)   Dr. White evaluated plaintiff for the BDD office's use in making a determination of disability. (R. at 983.)   After interviewing plaintiff and recording plaintiff's reports of her background, history of education, medications, work and psychiatric history, and current concerns, she conducted a mental status examination. (R. at 985-987.)   Of note, Dr. White commented that plaintiff reported she is "unable to work due to carpal tunnel in wrists." (R. at 984, 993.)

Dr. White noted plaintiff reported a psychotic episode in 2022, but no current outpatient mental health treatment or mental health treatment history, and "did not take [her] prescribed psychiatric medication(s) on the date of the evaluation. (Id.)   Plaintiff reported auditory hallucinations and paranoid ideation, but Dr. White's examination revealed plaintiff's "thinking was coherent and goal directed with no evidence of hallucinations, delusions or paranoia." (R. at 985.)    Dr. White found plaintiff's attention and concentration, and recent and remote memory skills, to be mildly impaired "due to anxiety or nervousness in evaluation." (R. at 986.) Plaintiff, however, was able to conduct simple calculations, complete serial 3s backward from 20 with no errors, recall 3 of 3 objects immediately and 2 of 3 after a delay. (Id.)   Dr. White recommended plaintiff attend individual psychological therapy and continue current treatment

and vocational training/rehabilitation for employment placement assistance. (Id.)  She found plaintiff's prognosis to be "guarded given symptoms and lack of therapy." (Id.)

In the medical source statement Dr. White supplied following her examination of plaintiff, she indicated in the check-boxes that plaintiff's ability to understand, remember, and carry out instructions would be "affected by the impairment," checking the blocks for "moderate" for the subcategories of "the ability to make judgments on simple work-related decisions, understand and remember complex instructions, and carry out complex instructions," and she indicated plaintiff would have a "marked" impairment with respect to "the ability to make judgments on complex work-related decisions." (R. at 988.)  In the free text block available for the assessor to identify the factors that support this assessment, Dr. White wrote "schizophrenia." (Id.)  Dr. White indicated that plaintiff's ability to interact appropriately with others would be impacted by the impairment, marking "moderate – marked" for each of the four subcategories: "interact appropriately with the public, interact appropriately with supervisor(s), interact appropriately with co-workers, and respond appropriately to usual work situations and changes in a routing work situation." (R. at 989.)  In the free text block available for the assessor to identify the factors that support this assessment, Dr. White again wrote only "schizophrenia." (Id.)  For the question asking whether "capabilities (such as the ability to concentrate, persist, or maintain pace, and the ability to adapt or manage oneself) affected by the impairment," Dr. White marked the "yes" check-box and circled the words "concentrate, persist, or maintain pace." (Id.)  Once again, in the free text block available for the assessor to identify the factors that support this assessment, Dr. White wrote only "schizophrenia," with no amplifying information. (Id.)

### 3.     State Agency Medical Consultants

6

Plaintiff's medical record file was reviewed by state agency consultants for independent disability determination analysis and residual functional capability ("RFC") to work. (R. at 65-86.)   Mental health professional Lisa Marie Cannon, Psy.D., on June 7, 2023, provided a psychiatric review and Lorlyne G. Lang, D.O., on June 30, 2023, noted findings about plaintiff's medical conditions. (R. at 65-73.)   On reconsideration, John David Gavazzi, Psy.D., on January 25, 2024, assessed plaintiff's mental health record, and Joanna Marie Deleo, D.O., reviewed other medical conditions on December 8, 2023. (R. at 74-86.)

### a.  Medical Health Reviewers

The medical health reviewers at both the initial determination and upon reconsideration assessed plaintiff's physical impairments to recommend plaintiff's RFC (R. at 71, 82-83.)   The initial reviewer found a "severe" impact from "other and unspecified arthropathies," while upon reconsideration, the reviewer instead found a "severe" impairment from "vascular insult to the brain." (R. at 69, 80.)   Both reviewers determined plaintiff was able to occasionally lift or carry up to 50 pounds and frequently lift or carry up to 25 pounds. (R. at 71, 82.)   Both reviewers found plaintiff was capable of standing, walking, or sitting for 6 hours in an 8-hour workday, and neither recommended any postural limitations. (R. at 71, 83.)   Both reviewers had Dr. Spinks' examination available for review with the record and noted the following:

> The opinion of B. Spinks DO given on 6/5/2023 regarding the claimant's functional ability is partially consistent with the evidence in the file.
>
> IME exam has decreased stand and walk ability. Said due to lower extremity weakness. Yet on exam there was no weakness strength was 5/5 b/l lower extremities. There was no abnormal range of motion. There was no sensory deficits.

(R. at 72, 83.)   The reviewers each considered Dr. Spinks' opinion "in light of the medical evidence and physical exam," and determined plaintiff's "allegations are considered partially consistent with the totality of the medical evidence." (Id.)   Due to plaintiff's age, education, and RFC, each recommended a finding of "not disabled" because plaintiff can adjust to other work. (R. at 72, 85.)   Both medical health reviewers recommended plaintiff was capable of "medium" exertional work. (Id.)

### b. Mental Health Reviewers

Mental health reviewers of the file each determined that plaintiff was "severe[ly]" impacted due to "substance addiction disorders," and impacted from "depressive, bipolar and related disorders," although the initial review found the impact of this to be "non-severe," upon reconsideration, the reviewer found this impact to be "severe." (R. at 69, 80.)   Neither reviewer found that plaintiff met the paragraph "B" criteria of the listings, with the initial reviewer finding "mild" impairments in the areas of "understand, remember, or apply information" and in "concentrate, persist, or maintain pace," but found "none" for the areas of "interact with others" and "adapt or manage oneself." (R. at 69.)   The reviewer upon reconsideration agreed with the initial reviewer's "mild" recommendations, but found "moderate" limitations from the areas where the initial review found "none." (R. at 81.)

In the initial review report category of Psychiatric Review Technique "Additional Explanation," the reviewer wrote: "Based on the medical evidence of the record, the claimant's mental health impairment is non-severe." (R. at 69.)    The reviewer determined: "No [mental residual functional capabilities] are associated with this claim." (R. at 72.)   Upon reconsideration, and, with the addition of Dr. White's assessment for record, the reviewer added

mental residual functional capability recommendations. (R. at 84.)   The reviewer suggested

plaintiff had no limitations in "understanding and memory," as well as no limitations to

"sustained concentration and persistence," but did have "moderate" limitations to social

interactions in the sub-categories of "the ability to accept instructions and respond appropriately

to criticism from supervisors," and "the ability to get along with coworkers or peers without

distracting them or exhibiting behavioral extremes." (Id.)   In the narrative accompanying this

table, the reviewer explained:

> The claimant struggles with social skills. The claimant communicates clearly, relates appropriately to familiar others, and behaves predictably in most social situations. The claimant can maintain socially appropriate behavior and can perform the personal care functions needed to maintain an acceptable level of personal hygiene.

(Id.)   The reviewer also recommended an adaption limitation in the sub-category of "the ability

to respond appropriately to changes in the work setting." (Id.)   In the narrative accompanying

this table, the reviewer explained:

> Available data suggests that the claimant has adequate ability to respond to basic work setting changes. The claimant appears to have adequate ability to take appropriate precautions in hazardous situations and utilize transportation. The claimant has adequate ability to organize and set simple goals.

(Id.)   Upon reconsideration, in the mental residual functional capability "Additional

Explanation" section of the report, the reviewer stated:

> Based on the evidence of record, the claimant's symptoms include depression, fatigue, low energy, regular cannabis use, regular alcohol use, intermittent cocaine use, irritability, anxiety, excessive worry, intermittent auditory hallucinations, paranoid ideation, limited insight, limited judgment, and difficulty adapting to changes. Symptoms are partially consistent with ADLs, clinical records, expectations with treatment, and functioning.
>
> I considered Dr. White's Medical Source Opinion is only partially consistent with this assessment, based on the totality of the evidence in file.

9

(R. at 85.)

The initial mental health reviewer found no mental health limitations, (R. at 73) but the reviewer upon reconsideration did find the "moderate" limitations discussed above and recommended, in consideration of those limitations, limiting plaintiff to unskilled work. (R. at 85.)

## IV.   LEGAL STANDARD OF REVIEW

Judicial review of the Commissioner's final decision denying a claimant's application for benefits is provided by federal law. 42 U.S.C. § 405(g).   The judicial review of a final decision is plenary with respect to questions of law. Schaudeck v. Comm'r Soc. Sec., 181 F.3d 429, 431 (3d Cir. 1999).   With respect to factual findings, this court must determine whether there is substantial evidence which supports the findings of the Commissioner.   "Substantial evidence is 'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate.'" Ventura v. Shalala, 55 F.3d 900, 901 (3d Cir. 1995) (quoting Richardson v. Perales, 402 U.S. 389 (1971)).   The deferential standard has been referred to as "less than a preponderance of evidence but more than a scintilla." Burns v. Barnhart, 312 F.3d 113, 118 (3d Cir. 2002) (quoting Jesurum v. Sec'y of U.S. Dep't of Health & Hum. Servs., 48 F.3d 114, 117 (3d Cir.1995)).   This standard, however, does not permit the court to substitute its own conclusion for that of the fact-finder. Id.; Fargnoli v. Massonari, 247 F.3d 34, 38 (3d Cir. 2001) (reviewing whether the administrative law judge's findings "are supported by substantial evidence" regardless whether the court would have differently decided the factual inquiry).   The Third Circuit Court of Appeals had held that an administrative law judge has a legitimate basis to

discredit a medical opinion when there are inconsistencies and contradictory evidence in the record. See Hubert v. Comm'r of Soc. Sec., 746 F. App'x 151, 153 (3d Cir. 2018).

## V.    DISCUSSION

### A.    Administrative Law Judge's Findings

Disability is defined under Title XVI of the SSA as the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). Similarly, a person is unable to engage in substantial gainful activity when his physical or mental impairment or impairments are of such severity that he is not only unable to do "his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy...." 42 U.S.C. § 1382c(a)(3)(B).

Proceeding through the sequential evaluation process, the ALJ determined at step one that plaintiff had not engaged in substantial activity since the claimed disability date, (R. at 19); at step two acknowledged plaintiff had severe impairments of stroke, obesity, schizophrenia, asthma, and substance abuse, (id.); and at step three found that plaintiff's combination of impairments did not meet the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1. (R. at 20.)   Plaintiff exhibited multiple moderate limitations, but none that rose to the level of serious or extreme as required to satisfy the "paragraph B" criteria, and the record of her conditions did not satisfy the "paragraph C" criteria. (R. at 20-21.)

Prior to commencing step four, the ALJ determined plaintiff's RFC.   The ALJ independently determined that plaintiff's record supports greater exertional limitations than those found by the state medical examiners and accounted for those by limiting plaintiff to work at the light exertional level. (R. at 21.)   The ALJ considered plaintiff's entire medical record, to include the internal medicine and psychological consultative opinions and the state administrative reviewers' reports discussed above, and determined plaintiff's RFC as follows:

> [plaintiff] has the residual functional capacity to perform light work as defined in 20 CFR 416.967(b) except she is limited to occasionally climbing and balancing; frequent stooping, kneeling, crouching, crawling, handling, fingering, and feeling; and no concentrated exposure to excessive cold, heat, vibration, or workplace hazards including unprotected machinery and unprotected heights. She is able to understand, remember, and carry out simple instructions; use judgment to make simple work-related decisions; and tolerate changes in a routine work setting. She cannot perform production-rate or pace work, such as assembly line or other work requiring hourly quotas; is limited to occasional interaction with the public; and is limited to frequent interaction with co-workers and supervisors.

(Id.)   At step four, the ALJ determined that plaintiff had no past relevant work. (R. at 25.)

With respect to the findings at step five, the ALJ posited a single hypothetical question to the VE to determine whether there was work an individual with an RFC like plaintiff was capable of performing given the physical and mental limitations noted in the RFC findings. (R. at 59-62.)   Utilizing plaintiff's data as a younger individual, with at least a high school degree, vocational history, and based on earlier testimony at the hearing, the VE opined that there were a significant number of jobs available in the national economy at the light level that a hypothetical individual with an RFC like plaintiff would be capable of performing. (R. at 61.)   The VE, based on the limitations of the hypothetical individual, identified work at the unskilled, light work strength level that plaintiff could perform. (Id.)   The VE noted that her testimony on tolerances

for "off task behavior and absenteeism," type and frequency of interactions with others, and

production rate or pace in a job was not based on the Dictionary of Occupational Titles ("DOT"),

but was based on her "professional expertise and training." (Id.)   She explained that "the DOT

does not explain climbing, … ladders, stairs, et cetera. Handling, fingering, and feeling …. And

of course, contact with people does not apply to coworkers, supervisors, and the general public."

(R. at 61-62.)   Plaintiff's attorney asked no questions of the VE. (R. at 62.)   The ALJ found at

step five that there were "jobs that exist in significant numbers in the national economy that

[plaintiff] can perform…." (R. at 25.)   The ALJ concluded that plaintiff was not disabled. (R. at

26.)

      **B.**     **Alleged Errors**

          **1. Failure to Explain Interaction Limitation Differences Between "Frequent" Interaction with Co-Workers and Supervisors and "Occasional" Interaction with the Public**

Plaintiff argues that the ALJ's decision was not supported by substantial evidence.

Plaintiff's appeal of denial of SSI benefits focuses on whether the ALJ erred by failing to explain

adequately why, after finding social interaction limitations persuasive, the ALJ created

distinctions between plaintiff's ability to interact with the public compared to supervisors and co-

workers. (Pl.'s Br., ECF No. 5 at 8.)   Specifically, plaintiff argues that the ALJ did not properly

address the limitations found by Dr. White when determining the RFC relative to social

interactions. (Id.)   ("The ALJ did not provide any explanation as to why he rejected greater

limitations in Plaintiff's ability to interact with coworkers and supervisors." (Id. at 9)).

Plaintiff's appeal does not contest the opinion of the ALJ relative to any previously claimed

physical limitation or the severity of any other mental health limitation; accordingly, plaintiff's

impairments in those respects will not be addressed in this opinion. See United States v. Dowdell, 70 F.4th 134, 139 (3d Cir. 2023) (affirming the district court's finding that an "argument had never been made, so it was waived").

Plaintiff alleges that the ALJ's failure to explain why the RFC deviated from Dr. White's persuasive opinion which found plaintiff had "moderate – marked" limitations interacting with others, was error. (Pl.'s Br., ECF No. 5 at 9.)   Plaintiff does not contest the rest of the ALJ's findings about plaintiff's severe limitations, determining plaintiff was limited to light exertional work with additional limitations based on plaintiff's impairments.   Plaintiff acknowledges that "the Secretary may properly accept some parts of the medical evidence and reject other parts." (Id.)

Plaintiff's main argument on appeal is that the ALJ "failed to explain why he ultimately found Plaintiff capable of 'frequent' interaction with co-workers and supervisors," and did not explain why he "rejected greater limitations in Plaintiff's ability to interact" with these individuals, when he found a limitation to only "occasionally" interact with the public. (Id.) Plaintiff correctly argues "[t]he public, supervisors, and co-workers are distinct groups, and are separately addressed on the mental RFC forms. Thus, limitations on one type of interaction in the RFC does not account for limitations on the others." (Id.) (quoting Grinolds v. Colvin, No. 15-30, 2015 WL 5178184, at *2 (W.D. Pa. Sept. 4, 2015)).   The fact that the ALJ developed different levels of limitations for each of those interaction categories demonstrates that he independently considered interactions with each group.

The ALJ found Dr. White's opinion

14

persuasive as it is consistent with the limited level and frequency of the claimant's mental health treatment, as she reported one instance of inpatient admission, but otherwise throughout the record, the progress notes showed only some moderate symptoms reported for which she was prescribed medication. … Moreover, the objective examinations showed only some limited findings, including some poor insight and judgment, and limited fund of information, but otherwise normal findings, including neutral mood, appropriate affect, average intellectual functioning, normal thoughts, good judgment, and no suicidal or homicidal ideation.

(R. at 24.)    The totality of the statement makes it clear that the ALJ found Dr. White's opinion to be consistent with the "moderate" findings the ALJ had determined were the appropriate level for plaintiff's mental work-related abilities.   The ALJ need not accept the higher range of the "moderate to marked" limitations proposed by Dr. White for interactions with supervisors and co-workers in light of the ALJ's determination that plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record." (R. at 22.)   The "moderate" finding covers a broad spectrum between "mild" and "marked" limitations and there is no direct correlation between the paragraph "B" criteria findings and limitations listed in a residual functional capability. See Hess v. Comm'r Soc. Sec., 931 F.3d 198, 209 (3d Cir. 2019) ("It is true, as the government contends, that no incantations are required at steps four and five simply because a particular finding has been made at steps two and three. … In short, the findings at steps two and three will not necessarily translate to the language used at steps four and five.").   Under these circumstances, the court finds substantial evidence supports the ALJ's decision.

### 2.  RFC Posed to the VE Did Not Contain "All" Plaintiff's Impairments

Plaintiff additionally argues that the RFC the ALJ used to pose hypothetical questions to the VE did not contain "all" plaintiff's limitations, because it did not reflect the greater social

15

interactions limitations assessed by Dr. White. (Pl.'s Br., ECF No. 5 at 13) (emphasis in original).    Plaintiff relies on Durden v. Colvin, 191 F. Supp. 3d 429 (M.D. Pa. 2016), and Burns, 312 F.3d 113, as support for her position that the ALJ erred in not presenting greater limitations to the VE.    Plaintiff, however, does not acknowledge that Durden recognizes that under Ramirez v. Barnhart, 372 F.3d 546, 554 (3d Cir. 2004), the plaintiff must establish that the record otherwise suggests that additional limitations were necessary, and the claimed greater limitations must be "clearly established in the record." Durden, 191 F. Supp. 3d at 459 (quoting Santiago-Rivera v. Barnhart, No. CIV.A. 05-5698, 2006 WL 2794189, at *11 (E.D. Pa. Sept. 26, 2006) (emphasis in original).

While the ALJ must develop the record and explain "how evidence in the record is treated. … The burden still 'lies with the claimant to develop the record regarding his or her disability because the claimant is in a better position to provide information about his or her own medical condition.'" (Id. at 449-50) (quoting Money v. Barnhart, 91 F. App'x 210, 215 (3d Cir. 2004)).    In Rutherford v. Barnhart, 399 F.3d 546, 554 (3d Cir. 2005), the court recognized that only "credibly established limitations" must be included in a residual functional capability determination.    Notably, "[e]ven though the RFC assessment draws from medical sources for support, it is ultimately an administrative determination reserved for the Commissioner." Carolyn A. Kubitschek & Jon C. Dubin, Social Security Disability: Law and Procedure in Federal Court 447 (2025 ed., Thomson Reuters, 2025) (quoting Winn v. Comm'r Soc. Sec. Admin., 894 F.3d 982, 987 (8th Cir. 2018)).

The ALJ considered each available mental health assessment and determined plaintiff's RFC based on the totality of the record.    Just as the ALJ found each of the opinions of the

examining physicians, and the consultative state agency reviewers, partially or somewhat persuasive when it came to plaintiff's physical limitations, so too did he scrutinize the psychological opinions available in the record. (R. at 24-25.)   The ALJ found both of the state agency mental health reviewer opinions, at initial level and upon reconsideration, "not entirely persuasive." (R. at 25.)   The ALJ found that plaintiff's "more recent progress notes showing statements of ongoing problems with depressed mood and anxiety" warranted greater limitations than were recommended at either level of the state agency reviews, and concluded that plaintiff had "moderate" limitations in all four of the sub-category areas of mental health work-related activities. (Id.)   As discussed above, the ALJ was not required to accept the higher-level of the "moderate to marked" limitations proposed by Dr. White after the ALJ had determined the "moderate" level findings were the appropriate level for plaintiff's mental health work-related abilities.

The RFC that the ALJ determined for plaintiff ultimately included numerous environmental and functional limitations to account for plaintiff's impairments. (See R. at 21, 25.)   The ALJ, in determining plaintiff's RFC, explained the work-related limitations he found after review of the record, specifically moderate mental health impairments.   The ALJ chose to provide in plaintiff's RFC a higher-level limitation for "occasional interaction with the public," despite having found plaintiff to have "moderate" limitations in "interacting with others," noting in the decision plaintiff's ability for "taking public transportation [and] socializing with friends." (R. at 20-22.)

The ALJ presented the RFC he determined applicable for plaintiff's limitations to the VE. The VE identified jobs a hypothetical person with an RFC like plaintiff would be able to perform

17

that exist in significant numbers in the national economy, taking those limitations into consideration. (R. at 60-61.)   The ALJ, in his decision, sufficiently explained the reasons, based on the totality of plaintiff's record, for his conclusions in the development of plaintiff's RFC and for accepting the testimony of the VE based on the VE's credible testimony consistent with the DOT and "her years of expertise and training in this field." (R. at 26.)   While plaintiff may view the situation differently, there is substantial evidence to support the RFC developed by the ALJ and the ALJ's acceptance of explanations given by the VE of jobs available in the economy that plaintiff could perform.

## VI.    CONCLUSION

The ALJ explained why he developed the RFC that he did, with multiple limitations included for less than the full range of work available at the light exertional level, taking into account all plaintiff's impairments. The hypothetical presented to the VE included all the limitations from the RFC and the VE found jobs that exist in the national economy for an individual with an RFC like plaintiff's RFC.   The ALJ sufficiently explained his decisions for developing the RFC, his presentation of the RFC to the VE in a hypothetical, and his acceptance of the VE's findings of available jobs that plaintiff could perform.

Having considered the parties' motions, the record as a whole and the applicable law, the court finds there is substantial evidence in the record to affirm the ALJ's decision.   The court will affirm the decision of the Commissioner.

An appropriate order and judgment will be entered.

Dated: June 10, 2026

BY THE COURT:


  s/Joy Flowers Conti           
Joy Flowers Conti
Senior United States District Judge